STATE OF NORTH CAROLINA, EX REL. COMMISSIONER OF INSURANCE v. NORTH CAROLINA RATE BUREAU, NORTH CAROLINA REINSURANCE FACILITY, NATIONWIDE MUTUAL INSURANCE COMPANY, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, THE AETNA CASUALTY AND SURETY COMPANY, LUMBERMENS MUTUAL CASUALTY COMPANY, GREAT AMERICAN INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY, UNITED STATES FIRE INSURANCE COMPANY, THE SHELBY MUTUAL INSURANCE COMPANY, AMERICAN MOTORIST INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY

No. 7910INS202

(Filed 20 November 1979)

**Insurance § 79.1— automobile insurance rates and classifications—no authority by Insurance Commissioner to order own plan into effect**

Under G.S. 58-124.21 the N.C. Rate Bureau is vested with the sole authority to determine rates and classifications for motor vehicle insurance, subject to review by the Commissioner of Insurance. Upon his review, if the Commissioner disapproves the Bureau plan, he must specify "wherein and to what extent" he disapproves it, and he may set a date after which the filing will no longer be effective, but he may not substitute his own proposals, whether they be deemed "modifications" or "substitutions," and may not order his own scheme into effect.

APPEAL by the North Carolina Rate Bureau and member companies from Order of the Commissioner of Insurance issued 30 October 1978. Heard in the Court of Appeals on 23 October 1979.

On 1 September 1977 the North Carolina Rate Bureau filed with the Commissioner of Insurance its proposed revised classification plan for private passenger automobile insurance, pursuant to the directives of G.S. § 58-124.19(4). By letters dated 6 September 1977 and 28 October 1977, the Bureau filed minor amendments to the original proposal. On 10 November 1977, after

notice of and hearings on the revised plan, the Commissioner approved the plan and ordered it into effect. Thereafter, however, by notice and order of public hearing dated 6 March 1978, the Commissioner contended that the classification plan failed to comply with Article 12B, Chapter 58, of the General Statutes in that (1) due consideration was not given to past and prospective loss experience and expenses in setting new rates for farm-use and multi-car discounts, inexperienced operator surcharges, and driving record surcharges for chargeable accidents; (2) the rates implemented in the Filing were "unfairly discriminatory" with respect to the farm-use and multi-car discounts, and the inexperienced operator and driving record surcharges; (3) the rate changes were not authorized by statute; and (4) samples utilized by the Bureau which were based on nationwide data were not credible samples.

Hearings were held on 10 April and 18 October, 1978. LeRoy A. Boison, Jr., assistant manager of the Private Passenger Actuarial Division for Insurance Services Office in New York, testified for the Bureau. W. Byron Tatum, Director of Technical Operations for the North Carolina Department of Insurance, testified for the Department.

On 30 October 1978 the Commissioner issued his Order disapproving in part the revised classification plan promulgated by the Bureau on 10 November 1977, and ordering the Bureau to "implement the proposals of the Department of Insurance . . . with respect to private passenger automobile liability insurance . . . ." The proposals thereby ordered into effect were contained in the findings of fact and conclusions of law made by the Commissioner at the conclusion of the public hearings, and resulted from a "number of modifications to the Bureau's Revised Classification Plan" submitted by staff members of the Department of Insurance. Significant among the "modifications" the Commissioner ordered the Bureau to promulgate were the following:

a. Restoration of the multi-car discount for liability coverages to 20%, the discount which was in effect prior to December 1, 1977;

b. Restoration of the "Farm-Use" discount for liability coverages to 25%, the discount which was in effect prior to December 1, 1977;

c. Reduction of the inexperienced driver surcharge to $35;

d. Replacement of the SDIP [Safe Driver Insurance Plan] point system with a system which follows as closely as possible the point system established by Chapter 20 of the General Statutes and utilized by the Department of Motor Vehicles;

e. Adjustment of the dollar values of driving record point surcharges so as to progressively increase the cost of each point as points are accumulated, . . .

With respect to the final modification, the Commissioner ordered the Bureau to adopt a schedule of points and surcharges also developed by the staff of the Department of Insurance.

From this Order, the Bureau appealed.

*Attorney General Edmisten, by Assistant Attorney General Richard L. Griffin, for plaintiff appellee.*

*Young, Moore, Henderson & Alvis, by Charles H. Young and R. Michael Strickland, for defendants appellants.*

HEDRICK, Judge.

Appellants argue that the Commissioner "lacks statutory authority to order the Staff Plan into effect." In response the Commissioner asserts that, since his proposals constitute mere "modifications" of the Bureau plan, rather than a substitution thereof, his order is well within his statutory grant of supervisory authority over the Rate Bureau.

The Filing in question was mandated by the 1977 Legislature when it enacted G.S. § 58-124.19 which provides in pertinent part:

(4) . . . The Bureau is directed to establish and implement a comprehensive classification rating plan for motor vehicle insurance under its jurisdiction within 90 days of the [sic] September 1, 1977 . . . . The Bureau shall at least once every three years make a complete review of the filed classification rates to determine whether they are proper and supported by statistical evidence.

*See also* G.S. § 58-30.4.

In its overhaul of Chapter 58, the Legislature also wrought some rather sweeping changes with respect to the power of the Commissioner to act upon Bureau filings. Prior to 1977, the Commissioner derived his authority from the following provision, G.S. § 58-248.1:

> *Order of Commissioner revising improper rates, classifications and classification assignments.* — Whenever the Commissioner, upon his own motion or upon petition of any aggrieved party, shall determine, after notice and a hearing, that the rates charged or filed on any class of risks are excessive, inadequate, unreasonable, unfairly discriminatory, or otherwise not in the public interest, or that a classification or classification assignment is unwarranted, unreasonable, improper or unfairly discriminatory he shall issue an order to the bureau *directing that such rates, classifications or classification assignments be altered or revised in the manner and to the extent stated in such order* to produce rates, classifications or classification assignments which are reasonable, adequate, not unfairly discriminatory, and in the public interest.
>
> . . .

[Emphasis added.]

Section 58-248.1 was repealed in its entirety, effective 1 September 1977. (*See* N. C. Session Laws, c. 828, s. 1) In its stead, the Legislature enacted § 58-124.21, the title of which alone is instructive of the change intended to be thereby effected. We quote *in toto* this authority statute under which the Commissioner must presently act, if he is to act at all:

> *Disapproval; hearing, order; adjustment of premium, review of filing.* — (a) At any time within 30 days from and after the date of any filing, the Commissioner may give written notice to the Bureau specifying in what respect and to what extent he contends such filing fails to comply with the requirements of this Article and fixing a date for hearing not less than 30 days from the date of mailing of such notice. At such hearing the factors specified in G.S. 58-124.19 shall be considered. *If the Commissioner after hearing finds that the filing does not comply* with the provisions of this Article, *he*

*may issue his order determining wherein and to what extent such filing is deemed to be improper and fixing a date thereafter,* within a reasonable time, *after which such filing shall no longer be effective.* Any order of disapproval under this section must be entered within 90 days of the date such filing is received by the Commissioner.

(b) In the event that no notice of hearing shall be issued within 30 days from the date of any such filing, the filing shall be deemed to be approved. If the Commissioner disapproves such filing pursuant to subsection (a) as not being in compliance with G.S. 58-124.19, he may order an adjustment of the premium to be made with the policyholder either by refund or collection of additional premium, if the amount is substantial and equals or exceeds the cost of making the adjustment. The Commissioner may thereafter review any such filing in the manner provided, but if so reviewed, no adjustment of premium may be ordered.

[Our emphasis.]

The Commissioner contends that the Legislature neither intended to limit his former statutory authority, nor did it succeed in so doing through the enactment of the foregoing § 58-124.21. To the contrary, he asserts, his supervisory powers "continued unabated." In so contending, the Commissioner relies upon *Commissioner of Insurance v. Automobile Rate Office,* 293 N.C. 365, 239 S.E. 2d 48 (1977), wherein our Supreme Court, per Justice Exum, held that orders of the Commissioner which constituted an approval in part, or a "modification or revision of the Rate Office plan", were statutorily authorized. *Id.* at 387, 239 S.E. 2d at 62.

This is a different case, however, and we cannot agree with the Commissioner's position. First, we note that the case upon which he purports to rely predates the 1977 legislative revisions. Secondly, we must construe the statute now in effect as the Legislature wrote it, to give it its plain meaning and intended effect.

The rule with respect to the construction and interpretation of statutory language is so well-settled that it hardly bears repeating: "[W]hen the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts

must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *Norris v. Home Security Life Insurance Co.*, 42 N.C. App. 719, 721, 257 S.E. 2d 647, 648 (1979); 12 Strong's N.C. Index 3d, *Statutes* § 5.5 (1978). Moreover, it is to be presumed that the Legislature acted in accordance with reason and common sense, and did not intend "untoward results." *State ex rel. Commissioner of Insurance v. North Carolina Automobile Rate Administrative Office*, 294 N.C. 60, 68, 241 S.E. 2d 324, 329 (1978). We believe that an "untoward result" would flow from an interpretation of G.S. § 58-124.21 that fails to take account of the obvious excision of language formerly employed in G.S. § 58-248.1 under which the Commissioner could claim the power to issue his own order, disguised as a "modification" of the Rate Bureau plan.

Such authority as the Commissioner now has with respect to approving or disapproving rate and classification filings by the Bureau is specifically spelled out in § 58-124.21: (1) He may give notice "specifying in what respect and to what extent he contends [the] filing fails to comply" with the statute; and (2) after hearings, "he may issue his order *determining wherein and to what extent such filing is deemed to be improper and fixing a date thereafter, . . . after which such filing shall no longer be effective.*" [Emphasis added.]

The legislative intent is clear. The Rate Bureau is vested with sole authority to determine rates and classifications for motor vehicle insurance, subject to review by the Commissioner. Upon his review, if the Commissioner disapproves the Bureau plan, he must specify "wherein and to what extent" he disapproves it, and he may set a date after which the filing will no longer be effective. He may not, however, submit his own proposals, whether they be deemed "modifications" or "substitutions." Nor may he order his scheme into effect. Obviously, no vestige of the Commissioner's former authority under former G.S. § 58-248.1 to direct that "rates, classifications or classification assignments be altered or revised in the manner and to the extent stated in [his] order" survived the legislative surgery of 1977.

The Commissioner is a creature of statute and, as such, he may act only to the extent and in the manner legislatively pre-

scribed. Thus, we will not be distracted by the fluttering of mother quail to examine, as the Commissioner urges we must do, whether his Order is supported by material and substantial evidence of record. In this case, it matters not. *See* G.S. § 58-9.6(b).

We hold as follows: The Order entered by the Commissioner dated 30 October 1978 is in excess of his authority, and, thus, we declare it null and void *ab initio*. G.S. 58-9.6. *See State ex rel. Commissioner of Insurance v. North Carolina Rate Bureau*, 44 N.C. App. 75, 259 S.E. 2d 926 (1979). Moreover, by attempting to do what he has no power to do, the Commissioner has abdicated what authority remains his to exercise under G.S. § 58-124.21. Therefore, the Order of the Commissioner is vacated, and the Filing of the Bureau, having never been disapproved as provided by the statute, by the very terms of the statute, remains in effect.

Order vacated.

Judges CLARK and MARTIN (Harry C.) concur.